## Whitehead v. Collins et al.

(Decided Jan. 22, 1937.)

J. C. JONES for appellant.

LESLIE W. MORRIS and MARION RIDER for appellees.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

This is an appeal from a judgment of the Franklin circuit court sitting in equity. The Honorable H. Church Ford, who was at that time judge of the Franklin circuit court, wrote an opinion in the case, which is made a part of the record, and in which we concur. Judge Ford said (in part):

"In 1923 the defendant George Collins, Sr., purchased from the heirs and devisees of Col. E. H. Taylor, Jr., a part of the estate known as 'Thistleton.' He had the title conveyed to himself as trustee for his sons, George Collins, Jr., and Harold Collins, until the younger of said sons should become 21 years of age, at which time the title vested in the sons, free of the trust. By the terms of the deed, during the life of said trust, the trustee had full power and authority to occupy, use, manage, sell, and convey said property or any part thereof.

"Before the occurrences out of which this litigation arose, both of said sons had reached and

passed 21 years of age and the title had vested in them free from the trust. It appears, however, that by the acquiescence of all parties concerned or by some mutual understanding, the father continued in the undisturbed use, occupancy, and enjoyment of the property and has continued to exercise the same powers of control and management of it since the termination of the trust as he exercised prior thereto.

"About the year 1900, the former owner, Col. Taylor, constructed a water pipe line leading from the reservoir of the Frankfort Water Company to a large cistern located near the residence on the land purchased by Collins. This line, which originally was a 1½-inch pipe, extends from the reservoir over the lands of the water company and other adjacent lands a distance of 1,050 feet to the point where it enters the Collins land. From there it extends 600 feet on the Collins land to the said cistern. The water is carried by gravity pressure from the reservoir to the said cistern, from which it is distributed by a pump to other points on the Collins property. Before the pipe line reaches the entrance to the Collins land, it is tapped by a 1-inch pipe line conveying water to several houses located on the land of W. H. Hawkins. It appears that this Hawkins line was built several years after the original line and the connection was made with the consent of Col. Taylor. Mr. Collins and Mr. Hawkins pay a flat rate per month to the water company for the water supplied through these lines.

"In the year 1911, at the instance of Col. Taylor, the plaintiff reconstructed the pipe line from the Hawkins pipe to the reservoir and in so doing he replaced the old 1½-inch pipe with a 2-inch pipe on that portion of the line. It thus appears that from 1911 until the events disclosed in this record the line consisted of a 2-inch pipe from the reservoir to the Hawkins property and the original 1½-inch pipe the remainder of the distance leading to and over the Collins land.

"In 1932, the plaintiff reconstructed the entire line from the reservoir on the land of the water

company to its terminus at the cistern on the Collins land and in so doing he replaced the 2-inch pipe from the reservoir to the Collins line with a 2½-inch pipe, and replaced the old 1½-inch pipe on the Collins land with a 2-inch pipe.

"After taking the requisite statutory steps to perfect a mechanic's and material man's lien against the Collins land, the plaintiff filed this action seeking to recover from George Collins, Sr., George Collins, Jr., and Harold Collins the sum of $1,171.25 for the material and labor furnished by him in the reconstruction of this entire line and praying that he be adjudged a lien on the Collins land for the same.

"The original petition alleges an express contract of the plaintiff with the defendants in person and through their authorized agent, Mrs. George Collins, Sr., for the entire performance.

"By an amended petition the plaintiff alleges an implied contract and ratification thereof by the defendants by acceptance of and use and enjoyment of the work and materials furnished.

"As heretofore stated, there is about 1,050 feet of this water line which is located on the land of the water company and others, which was reconstructed and enlarged in 1911, and this portion of the line supplies water from the reservoir not only to the Collins pipe but also to other customers of the company. Three houses on the Hawkins farm are supplied by this main line. It is rather significant that the water supply carried by this main line to the houses on the Hawkins farm is not shown to have been impaired or deficient to any extent. This would seem to indicate that any trouble as to the supply at the Collins cistern had its source in the old pipe located on the Collins land, and not in the main line which supplied all parts alike.

"Without encumbering this opinion with a detailed statement of the testimony, I deem it sufficient to say that it appears to me that the reconstruction of this 1,050 feet of pipe line located on the land of the water company and others, entirely outside of the boundary of the Collins land, was

done by the plaintiff without the semblance of authority from any one whose rights were involved. It is not shown to my satisfaction by the evidence that either of the defendants or their alleged agent, Mrs. Collins, knew, consented to, contracted for, or even contemplated such an extensive undertaking, involving so large an expenditure of money. The mere continued use of water from their cistern by the Collins family, under the circumstances disclosed by the testimony, in my opinion, cannot be regarded as a ratification or acceptance of work on adjacent lands belonging to others. In this regard, the Collins family did nothing more than the other customers of the water company who received their water supply by the same means. The expensive reconstruction of this part of the water line by the plaintiff appears from the evidence to have been not only unauthorized but of doubtful necessity. If the plaintiff must unfortunately suffer the loss of his labor and materials, such loss is entirely attributable to his own folly, from which the court is helpless to either protect or relieve him.

"The 600 feet of the old water pipe located on the Collins land was doubtless the chief source of the trouble which the plaintiff was called upon to remedy. The extent of the service which the plaintiff was called upon to render in this regard, or which he was warranted in rendering under the indefinite, meager, and altogether uncertain and vague instructions which he received, as he says, from Mrs. Collins and George Collins, Jr., and the extent to which Mrs. Collins was authorized to act as agent for the defendants in connection with the work, need not be discussed or determined."

The chancellor held that the plaintiff was entitled to recover the reasonable value of his labor and materials actually put on the property of the defendants, estimating the amount of labor on the length of line on the defendants' property in the proportion that such length bore to the whole line. He was of the opinion that the evidence showed an "acceptance and ratification" by the defendants of so much of the line as was located on their property.

The proof indicates that the original line put in from the residence of Col. Taylor to the reservoir con-

sisted of 1½-inch pipe and that in 1911 the plaintiff, at the request of Col. Taylor, removed the pipe from the reservoir to the Collins line and substituted 2-inch pipe in its place. There was testimony to the effect that 1½-inch pipe was more subject to friction and more apt to be clogged with rust than 2-inch pipe. As pointed out by the chancellor, the circumstance that there was no testimony to show that the residences on the Hawkins property were not receiving water indicates very strongly that the replacement of the line from the point of connection with the Hawkins pipe to the reservoir was not reasonably necessary and could not, therefore, be said to be within the terms of any implied contract to make repairs. Plaintiff himself testified:

"While they were digging in the line, Mrs. Collins come out and wanted to know how far we had to go, whether to the reservoir. I said, 'I don't know; from the looks of this line it is in awful condition.' She said, 'This is about the only thing we haven't done since we got the farm from Mr. Taylor; renewed nearly everything on the farm except this water line.' I said, 'Well, this line has been in here between thirty-five and forty years and it has rotted out,' and I took Mrs. Collins down—we walked up and down the ditch at different times, and we got to taking the pipe out and I would show her the condition of the pipe, the holes that were in the pipe."

Clearly, the pipe to which the plaintiff must have referred in this alleged conversation was the original 1½-inch pipe which had been in "between thirty-five and forty years." We agree with the view of the chancellor that there was a failure to establish any semblance of authority on the part of the plaintiff to reconstruct so much of the line as extended beyond the connection with the Hawkins line toward the reservoir. On the other hand, we are inclined to the view that the evidence fairly establishes an implied agreement authorizing the plaintiff to do what was reasonably necessary in the way of making repairs to secure a supply of water, and the proof establishes the reasonable necessity for the reconstruction of the line from the Collins residence up to the point found by the chancellor.

The judgment on both the original appeal and the cross-appeal is affirmed.